## MAC GOSSETT v. THE STATE.

### No. 169.   Decided October 13, 1909.

**1.—Murder—Indictment—Name of Deceased.**

Where, upon trial for murder, the indictment charged that the defendant, with malice aforethought, did unlawfully kill a reasonable creature in being, to wit, an infant child of Sudie Gossett, the name of which said infant child is to the grand jurors unknown, by then and there throwing said child into the water, and thereby drowning it, etc., and there was nothing in the evidence to suggest from any source that the child had a name, or that its name by any diligence could have been discovered, the same was sufficient.

**2.—Same—Venue—Judicial Knowledge.**

Where, upon trial for murder, the evidence showed that the crime was committed in the city of Galveston, the court judicially knew that said city is in Galveston County, State of Texas, and the venue was sufficiently proven. Following Monford v. State, 35 Texas Crim. Rep., 237.

**3.—Same—Charge of Court—Accomplice—Requested Charge.**

Where, upon trial for murder, the court charged that the jury were required

to find and believe, beyond a reasonable doubt, not only that the child came to its death by being thrown into the water by some one, but were further instructed that, if they had a reasonable doubt as to whether defendant was present at said time and place, and was not the person who threw said child into the water, they should acquit him, this sufficiently submitted the question as to whether defendant was a principal in the crime, and not an accomplice; and there was no error in refusing a special requested instruction on the subject of accomplice.

#### 4.—Same—Sufficiency of the Evidence.

Where, upon trial for murder, the evidence, although circumstantial, sustained a verdict of murder in the second degree, the same will not be disturbed.

Appeal from the Criminal District Court of Galveston. Tried below before the Hon. E. R. Campbell.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Albert G. Greenwood,* for appellant.—On question of indictment with reference to name of deceased: Jorasco v. State, 6 Texas Crim. App., 238; Puryear v. State, 28 Texas Crim. App., 73; McCloy v. State, 47 Texas Crim. Rep., 124; Carter v. State, 40 Texas Crim. Rep., 225; Langham v. State, 26 Texas Crim. App., 533; 22 Cyc., 349 and 465; 25 Cyc., 93. On charge of accomplice where evidence tends to implicate accused and another: McMahon v. State, 46 Texas Crim. Rep., 540; Houston v. State, 47 S. W. Rep., 468; Red v. State, 47 S. W. Rep., 1003; Hughes on Instructions to Juries, sec. 293. On question of insufficiency of the evidence: Josef v. State, 34 Texas Crim. Rep., 446; Fletcher v. State, 68 S. W. Rep., 173; Clifton v. State, 39 Texas Crim. Rep., 619; Harris v. State, 28 Texas Crim. App., 308; Berryman v. State, 51 Texas Crim. Rep., 192; McCowan v. State, 51 Texas Crim. Rep., 205; Gay v. State, 42 Texas Crim. Rep., 450; Cordes v. State, 54 Texas Crim. Rep., 204, 112 S. W. Rep., 943; Kugadt v. State, 38 Texas Crim. Rep., 681; Johnson v. State, 45 Texas Crim. Rep., 453; 12 Cyc., pp. 428 and 628; 21 Cyc., p. 1001; White's Penal Code, art. 654.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was charged by indictment preferred in the Criminal District Court of Galveston County on the 26th day of February, 1909, with the offense of murder. The charging part of the count in the indictment on which the case was tried is as follows: "That Mac Gossett, late of the county aforesaid, on or about the 18th day of the month of January, A. D. 1909, in the county of Galveston, and the State of Texas, with his malice aforethought, did unlawfully kill a reasonable creature in being, to wit, an infant child of Sudie Gossett, the name of which said infant

child is to the grand jurors unknown, by then and there throwing said child into the water and thereby drowning it." He was on his trial May 25, 1909, found guilty by the jury of murder in the second degree, and his punishment assessed at confinement in the penitentiary for twenty-five years.

1. Among the grounds urged for reversal is that the indictment is insufficient in that in an indictment charging murder of an infant child which has no name, it is necessary to the sufficiency of the indictment to allege that the child was without a name. We think the contrary of this proposition is in terms decided in the case of Puryear v. State, 28 Texas Crim. Rep., 73. In that case the indictment charged that the appellant "did . . . with malice aforethought kill an infant child of Essie Puryear, said child being without name." It was contended by counsel in that case that the description of the party killed was not sufficient. In passing on this matter Judge Hurt, speaking for the court, said: "Article 425 of the Code of Criminal Procedure provides as follows: 'In alleging the name of any person necessary to be stated in the indictment, when the name of such person is unknown to the grand jury that fact shall be stated, unless the person be the accused, and if this be the case a reasonably accurate description of him shall be given.' If the name is unknown to the grand jury that fact shall be stated. Evidently if the person has no name the name could not be known to the grand jury. Hence, the allegation that the child was without name is equivalent to alleging that the name was unknown. The person killed is alleged to be the child of Essie Puryear, and this child is alleged to be without a name. This is equivalent to alleging that the family name of the child was Puryear, and that its christian name was unknown to the grand jury. Hence, we have certainty to a common intent, which is sufficient." The indictment there was questioned, as will be seen, for the reason that in terms it was not stated that the name of the person killed was to the grand jury unknown, but that said child was without name. The allegation "child being without a name" was held equivalent to the allegation that the name of such child was unknown. In this case the indictment literally follows the statute. Tested by the evidence, appellant is in no better condition to complain for the reason there is not a scintilla of evidence in the record that the child had a name, or if it had such name, it was known to any person whose testimony would have been available before the grand jury. We think the case is easily distinguishable from the case of McCloy v. State, 80 S. W. Rep., 524. In that case the indictment contained the following allegation: "A female baby, light brown in color, about three months of age, a better description and the name of the baby being to the grand jurors unknown." In that case it is stated the facts further show that the name of

Priscilla (if not known) could have been easily ascertained by the grand jury at the time the indictment was preferred. It is stated further that they had indubitable evidence before them that the child was the daughter of appellant, and that appellant's name was Rosa McCloy. Then, of course, they knew the name of the child to that extent. It is also stated that the grandmother of appellant testified that the name of the child was Priscilla. The evidence for the State disclosed that the child was born at the residence of the grandmother, at whose house appellant had remained practically all the time from the birth of the child until a few hours before its death. This case affirmed the rule laid down in the Puryear case, supra, where the child alleged to have been killed was averred to be the infant child of its mother, giving the name of the mother. That was held sufficient allegation as to name, it appearing that the child had been born just before its destruction; that is, within a few moments. We think the allegation in the indictment is sufficient, tested on its face; that is, that the child alleged to have been murdered was the child of Sudie Gossett, and that its name was unknown. If we look to the evidence there can in no sense be said to be a variance, for the reason there is no hint or suggestion from any source that the child had a name, or that its name by any diligence could have been discovered.

2. Again, it is urged that the case should be reversed for the reason that the venue was not proven. It is true that a perusal of the statement of facts does not disclose that any witness testified that the killing occurred or that the child was found in Galveston County, Texas, in so many words. However, there is repeated statements that St. Mary's Infirmary, where the child was born, and the canal where the child was found, were in the city of Galveston, and such other reference to events occurring in the city of Galveston as placed the venue in said city. If, therefore, we may judicially know that the city of Galveston is in Galveston County, in this State, then this point is wholly without merit. That we do judicially know this fact and must take cognizance of it is no longer an open question in this State. This question was distinctly raised in the case of Monford v. State, 35 Texas Crim. Rep., 237. In that case Judge Henderson, speaking for the court, says: "The venue in this case, we think, was sufficiently proved. The evidence showed that the United States internal revenue license was granted for Galveston County, and the witness, Girardin, testified that the Girardin Hotel, where appellant was engaged in the business, was in Galveston, and this court judicially knows that Galveston is situated in Galveston County. See Laws 22d Legislature, Called Session, p. 45."

3. Again, it is urged that the court erred in refusing to give in charge to the jury appellant's special instructions on the subject of

accomplice. This special charge so requested by appellant is as follows: "In connection with the court's general charge you are instructed that, all those who are present and participate by acts or encourage by words or gestures in the commission of an offense, are principals.

"You are further instructed, that an accomplice is one who is not present at the commission of an offense, but who, before the act is done, advises, commands or encourages another to commit the offense.

"Bearing in mind the foregoing instructions, you are further instructed that if you believe beyond a reasonable doubt that Mack Gossett is guilty in this case, but have a reasonable doubt as to whether he is guilty as a principal or accomplice, it is your duty to find him not guilty."

We think it may well be doubted whether the court was called on to give any instruction on this subject at all. Before there can be an accomplice there must be a principal. There is no hint or suggestion in the evidence that any person or persons were or could reasonably be held to be in any way connected with the murder of this child except appellant and its mother, and the evidence in the case of her physical condition strongly tends to rebut the idea that she could unaided have taken this child a distance of eighteen or twenty blocks and in person have thrown it into the canal. However, if in any event a charge on this question were demanded, we think the issue, so far as it could be said to arise in the evidence, was sufficiently submitted to the jury in the following instruction included in the court's general charge: "If you believe from the evidence beyond a reasonable doubt that the body of the child alleged to have been found on the 22d day of January, 1909, at or near the foot of Market Street, in the city of Galveston, was the body of an infant child of the said Sudie Gossett, and if you further find from the evidence beyond a reasonable doubt that the said child came to its death by being thrown into the water by someone and thereby drowned, but also further believe that the said defendant was not present at said time and place, but was at said time at some other and different place, and was not the person who threw said child into the water, if it was so thrown, or if you have a reasonable doubt thereof, then you will find the defendant not guilty." By this charge the jury were required to find and believe beyond a reasonable doubt not only that the child came to its death by being thrown into the water by someone, but were further instructed that if they had a reasonable doubt as to whether appellant was present at said time and place and was not the person who threw said child into the water, they would acquit him. We think clearly that this guarded every right of appellant and

left him wholly without just ground of complaint in respect to the submission of this issue.

4. The only question arising in the case about which we have had any doubt or in respect to which there is any difficulty is as to the sufficiency of the evidence to sustain the conviction. However, from a careful and painstaking examination of the entire record we think it morally certain and are firmly convinced that appellant was guilty of the murder of this child. We also believe that, tested by the precedent, the evidence is sufficient. The case is a most pathetic one, and the death of this child and its little twin brother chronicles a most horrible state of affairs. The evidence, in brief, shows that appellant and his wife were married in Anderson County, where they lived on the 16th day of August, 1908. They went to Galveston in January of this year. On the second day of that month they went to St. Mary's Infirmary. On the next day Mrs. Gossett was delivered of two male children, one slightly larger than the other and differing from the other in the fact that its hair was slightly lighter than the twin brother. On Friday succeeding the birth of the children, Mrs. Tompkins, sister of Mrs. Gossett, came to Galveston. She returned home the next day. She states that while in Galveston appellant said something about telling nobody about the children in Palestine; that he asked her not to tell it; that the matter arose in this way: That her sister began to cry and said she could not go back home, and "I asked her why." That in this connection appellant said, "Burt," which was her given name, "won't say anything about it." The evidence also discloses the fact that just before leaving the hospital appellant requested a Mrs. Hennessey to take care of the children, which she was disposed to do, but the sisters of charity in charge of the hospital objected. It is also shown by the testimony of Sister Mary Florence that on the evening appellant left the hospital, which was between eight and nine o'clock of January 17, on Sunday evening, that the carriage arrived to take them from the infirmary, and that appellant had brought his wife downstairs in his arms and had set her in the room, and that she asked him if he was not going to take the children away and he replied that he was not, but would call for them the next day. The evidence shows that on this day about two or three o'clock appellant called on the proprietor of the Atlanta Hotel and engaged a room for himself and wife for two days, and paid for it. He was not at any time thereafter seen by the proprietor of the hotel. His wife appeared in the hall of the hotel the next morning and was seen by this witness. Nothing more seems to have been seen of either of the parties in Galveston, nor were they seen elsewhere until Tuesday night when they arrived at Palestine without the children. They stopped at the residence of Mrs. Tompkins, Mrs. Gossett's sister, and nothing was

said and no explanation made by appellant as to the whereabouts of the children or what had become of them. The evidence further shows that on Sunday night, the 17th day of January, the two children were brought downstairs by two nurses in the infirmary and were placed in a carriage, and at this time they were alive. The evidence also shows that they were driven to the Atlanta Hotel, and that the children were taken from the carriage and placed by appellant on the bed in the room engaged for himself and his wife. When the children were born no arrangements had been made for clothing for them. Mrs. Hennessey testifies to having bought some clothing, and other suitable apparel was arranged for and provided by the Sisters in charge of the infirmary. One of these children was found on the succeeding Friday evening after they left the infirmary in the canal near the foot of Market Street, in Galveston, about 1:45 or 2 o'clock. It was fully dressed. It had on clothing in every respect similar to the clothing it had worn while in the infirmary. Some of this clothing was expressly and directly identified as being the clothing bought by Mrs. Hennessey and worn by this child. One garment, which it was said was homemade, was · especially identified. Another wrap was identified by reason of the cuffs and collars being blue with white polka dots. One of the children was further identified by being wrapped in a blanket, which, as the witnesses say, had near the center of it what they called a break or sort of a worn place, and by further having upon it these marks or letters "P-2." This was a mark peculiar to the St. Mary's Infirmary, and stood for these words: "Private Sanitarium, Floor No. 2." The physician who delivered Mrs. Gossett of these children saw them after their birth, and said that basing his judgment on their appearance, ·size, age, sex and all, it was his judgment and belief that they were the children of Mrs. Gossett. There was no evidence of the death, disappearance, or loss of any other child or children. They were about the same size, about the same color of hair, same sex, and taking all the evidence of dress, and considering the finding of the blanket, and many other circumstances, which we deem unnecessary to chronicle here, has convinced us beyond the shadow of a doubt that these were the Gossett children. Nor can there be, as we think, any doubt that they were killed by drowning. While some days had intervened between the disappearance and the time they were found, putrefaction had not yet set in. There was some slight mutilation on the face of one of the children supposed to have been done by fish, yet the bodies were practically intact. The physician who conducted the postmortem gave it as his opinion that their death was caused by drowning. This opinion, as he states, was based on the fact that if the children had first been killed and placed in the water, that little water

and no air would have been found in the lungs. As it was, he said there was air in the lung cells and also some sand in the trachea, demonstrating that the death was caused by drowning, and that they entered the water alive. The evidence on this question is entirely satisfactory, we think. This leads us to the belief that these two facts may be assumed to be conclusively settled: First, that the children found were identified as the children of Sudie Gossett; second, that the child with whose murder appellant stands charged met his death by drowning.

5. The next question which arises is, does the evidence conclusively demonstrate that appellant was guilty of the murder of the child? In passing on this question, it is important to note these facts: Evidently the child had been begotten out of wedlock. Appellant was married on the 16th day of August, 1908. The child was born fully developed on the 2d day of January, 1909. His wife was in great distress and under great apprehension that her friends in Palestine would know of the birth of these children, and stated in the presence of her sister that she could not go back to Palestine. Appellant requested Mrs. Tompkins not to say anything about it, and assured his wife, in substance, that her lapse from virtue's ways would not be known. That the children were alive when they left the hospital is conclusively demonstrated; that they could not have been lost, one or both, from their age is certain. No other person had a motive for their death. The arrival of appellant in Palestine within two days from the time he left the hospital with no explanation made of the disappearance of the children is a potent and significant fact. If he was not guilty of the murder of these children and not responsible for the disappearance, every suggestion of parental love and every instinct of the heart would have called out to him to make inquiry in respect to their disappearance. The physical condition of the mother renders it improbable, if not indeed impossible, that she alone could have killed these babies. That they were killed is certain; that they were killed by someone is inevitably true. Appellant had the motive, he had the opportunity. The evidence does not suggest by the slightest hint any motive for anyone else to have killed them or any connection of anyone else with their death. His disposition to hush up the birth of the children, his disposition and efforts to leave them or give them in the keeping of someone else, his silence and failure to make an explanation, when such silence, if he were innocent, was contrary to all human nature, renders it certain to our minds that he was the guilty actor in the death of these children. Appellant, indeed, proved a good reputation as a peaceable law-abiding citizen. His able counsel with great resourcefulness and skill sought to impeach the testimony of some of the witnesses for the State, particularly Mrs. Hennessey, and Detective Duffy. No

other testimony of consequence was offered by him. Mrs. Gossett, appellant's wife, was not offered as a witness. It does not appear from the record whether she was indicted or not. However, we may ·assume that she was. Appellant did not take the stand in his own behalf. Reliance seems to have been had on the weakness of the State's case, and it must be confessed that this insistance is maintained in the brief with great force and vigor. However, much as we have been impressed by the able presentation of the learned counsel, we are not prepared to concede or believe that the evidence is so slight as would justify us in setting aside the verdict ·of the jury and the judgment of the court below. The facts of this case are more convincing that the evidence in Jackson v. State, 29 Texas Crim. App., 458, where a conviction was sustained. The case is circumstantial. The evidence, however, was fully developed, every link closely connected and marshalled with unusual skill and sagacity. The jury who heard all the evidence was satisfied of his guilt. The learned court before whom the case was tried has affirmed their finding. Convinced, as we are, that the verdict of the jury is not without support in the evidence, but further, that all the evidence considered together affirms its justice, it only remains for us to affirm the judgment of conviction, which is now done.

*Affirmed.*

[Rehearing denied December 22, 1909.—Reporter.]